Filed 6/30/26  P. v. Kambon CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>THEON KAMBON,<br>        Defendant and Appellant. | C100478<br><br>(Super. Ct. No. 19FE020740) |

A jury found defendant Theon M. Kambon guilty of inflicting corporal injury on his girlfriend T.D. and battery causing serious bodily injury.  In a bifurcated trial, the jury found that defendant was previously convicted of a serious felony offense.  The trial court sentenced defendant to 18 years in state prison.

Defendant now contends (1) the trial court violated his constitutional confrontation rights by admitting T.D.'s preliminary hearing testimony after the prosecution failed to secure her appearance at trial; (2) the prosecutor committed misconduct during rebuttal argument, but if the prosecutorial misconduct claim is forfeited, defendant's trial counsel rendered ineffective assistance; (3) the prosecutor violated *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) by failing to return defendant's cell phone; (4) defendant's trial counsel was ineffective in failing to adequately investigate the case; (5) the trial court erred in denying defendant's new trial motion; (6) cumulative prejudice requires reversal;

1

and (7) the trial court imposed an upper term sentence without considering certain mitigating factors.

We conclude (1) the portion of defendant's confrontation claim asserting lack of due diligence is forfeited, and the portion pertaining to evidentiary reliability lacks merit; (2) the prosecutorial misconduct claim is forfeited and defendant has not established his alternative claim of ineffective assistance; (3) there was no *Brady* violation; (4) defendant's ineffective assistance claim based on his attorney's failure to investigate lacks merit because he has not shown that his attorney's investigation was inadequate; (5) the trial court did not err in denying defendant's new trial motion; (6) there is no cumulative prejudice to assess; and (7) defendant's challenge to the upper term sentence is forfeited.

## BACKGROUND

We recite the facts based on all the evidence, including T.D.'s preliminary hearing testimony, which was read into evidence after she did not appear at trial. As required, we do so in the light most favorable to the judgment.

Defendant and T.D. were involved in an abusive romantic relationship for about three years.[1] They lived together in an office building that defendant rented.

The incident giving rise to defendant's convictions happened on October 21, 2019. That morning, defendant and T.D. argued while defendant drove her to the house of her cousin, David L., where she provided in-home care for her aunt. Defendant and T.D. continued to argue when they arrived at David L.'s house, and defendant followed T.D. into the kitchen. T.D. told defendant she was done and wanted to break up. When

---

[1] Evidence was presented at trial regarding defendant's prior acts of abuse against T.D. and others, along with prior convictions for assault by means of force likely to cause great bodily injury, infliction of corporal injury, and false imprisonment. We do not describe that evidence because it is not relevant to the contentions on appeal.

2

defendant responded that she "wasn't going anywhere," T.D. insisted she "didn't have to be with him" and could find somewhere else to live. Defendant repeated that she "wasn't going to go anywhere." T.D. turned to put her purse down, and when she turned back toward defendant, he punched her in the face. T.D. ran to the basement with blood running from her nose.

David L. was working in his basement when T.D. came running downstairs. After defendant left, David L. took her to the hospital, where medical staff unsuccessfully tried to reset T.D.'s nose. She later had surgery to repair the damage, but that was not completely successful either. At the time of the preliminary hearing, four or five months later, she was still unable to breathe out of her right nostril.

T.D. did not report the incident to police for 10 days. David L. made the call for her. An officer responded to David L.'s house and spoke with T.D. and David L. T.D. had bruising under both eyes, a large bandage over her nose, and visible bruising around the bandage. Among other evidence, the People adduced testimony at trial from a domestic violence expert, who testified about the cycle of violence and various common misconceptions a person might have about the behavior of victims of domestic violence.

Defendant testified in his own defense. He denied ever assaulting T.D.

The jury found defendant guilty of inflicting corporal injury on T.D. and battery causing serious bodily injury. The jury also found that defendant personally inflicted great/serious bodily injury. In a bifurcated trial, the jury found that defendant was previously convicted of a serious felony offense. The trial court sentenced him to 18 years in state prison.

## DISCUSSION

### I

Defendant contends the trial court violated his state and federal constitutional confrontation rights by admitting T.D.'s preliminary hearing testimony. Specifically, defendant argues (1) the prosecution did not establish that it exercised due diligence

3

in attempting to secure her presence at trial, and (2) the prosecution did not establish that her preliminary hearing testimony was reliable because, although she was subject to cross-examination, there was not a similar interest and motive to cross-examine her at that hearing. We conclude the due diligence claim is forfeited, and the reliability claim lacks merit.

The preliminary hearing was held in March 2020. The trial date was subsequently vacated and reset multiple times. On October 28, 2021, the trial court and the parties discussed whether T.D.'s preliminary hearing testimony would be read into evidence because the prosecution was unable to secure her presence at trial, referring to the matter as "the due diligence issue." After the prosecutor stated that she preferred not to set forth their efforts to locate T.D. in defendant's presence, the trial court noted that the parties discussed the matter in chambers and the prosecution provided evidence of their efforts in that regard. The evidence was filed under seal.

Asked to "weigh in on that topic," defense counsel stated: "Your Honor, we did discuss this in the back. Due diligence, it sounds like that has been satisfied." Defense counsel then objected to the admission of the preliminary hearing testimony because defendant "had an objection to the public defender representing him at the preliminary hearing." Defense counsel explained: "My understanding is there was a legal conflict that somehow became discovered by the public defender at the preliminary hearing, and that's how I got this case. I'm with the conflict panel. The fact there was this conflict that existed even though the prelim was allowed to go forward, I think, that would create quite a bit of prejudice for the defense here." Defense counsel argued, "I'm not sure how effective the public defender was in cross-examining [T.D.]" and "I never had an opportunity to [do so]," which "puts [defendant] at a distinct disadvantage to confront the lone accuser here, which is [T.D.]"

In response, the prosecutor argued "it would be mere speculation to say the conflict arose prior to the preliminary hearing," as opposed to afterwards. The prosecutor

4

also argued that the public defender who represented defendant at the preliminary hearing cross-examined T.D. extensively and did so with "the same motive" that defense counsel had in wanting to cross-examine her at trial.

The trial court ruled that T.D. was unavailable as a witness under Evidence Code section 240[2] because the prosecution "exercised due diligence" but was unable to secure her presence. According to the trial court, that opened the door for use of the preliminary hearing transcript under section 1291. The trial court noted that the evidentiary portion of the trial would not begin for several days, so the ruling would be subject to reevaluation if circumstances changed. Defense counsel did not ask the trial court to reconsider its ruling based on any change in circumstances.

Although defense counsel's objection and argument before the trial court preserved defendant's confrontation challenge based on evidentiary reliability, defense counsel did not object to the preliminary hearing testimony based on a lack of due diligence. Indeed, defense counsel effectively conceded that the evidence produced by the prosecution in chambers satisfied their burden in that regard. Defendant's due diligence argument is forfeited. Anticipating this conclusion, for the first time in his reply brief, defendant raised an alternative claim of ineffective assistance. However, we do not consider contentions asserted for the first time in a reply brief. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.)

As for defendant's reliability challenge, we conclude it lacks merit. "A criminal defendant has the right under both the federal and state Constitutions to confront the witnesses against him. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) This right, however, is not absolute." (*People v. Wilson* (2005) 36 Cal.4th 309, 340 (*Wilson*).) " ' "An exception exists when a witness is unavailable and, at a previous court

---

[2] Undesignated statutory references are to the Evidence Code.

proceeding against the same defendant, has given testimony that was subject to cross-examination." ' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 674-675.) "[S]ection 1291 codifies this traditional exception." (*Wilson*, at p. 340.)

Section 1291, subdivision (a) provides that "[e]vidence of former testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness" and "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he [or she] has at the hearing." (§ 1291, subd. (a)(2).) "Both the United States Supreme Court and [the California Supreme Court] have concluded that 'when a defendant has had an opportunity to cross-examine a witness at the time of his or her prior testimony, that testimony is deemed sufficiently reliable to satisfy the confrontation requirement … . [Citation.]' [Citations.] In *Crawford v. Washington*[ (2004) 541 U.S. 36], the high court stated that a prior opportunity to cross-examine a witness was 'dispositive' of the admissibility of his testimonial statements, 'and not merely one of several ways to establish reliability.' [Citation.]" (*Wilson, supra*, 36 Cal.4th at p. 343.)

In *People v. Zapien* (1993) 4 Cal.4th 929 (*Zapien*), the California Supreme Court held that preliminary hearing testimony satisfied this reliability requirement even though "a defendant's motive for cross-examining a witness during a preliminary hearing" often differs "from his or her motive for cross-examining that witness at trial." (*Id*. at p. 975.) The court explained: "For the preliminary hearing testimony of an unavailable witness to be admissible at trial under … section 1291, these motives need not be identical, only 'similar.' [Citation.] Admission of the former testimony of an unavailable witness is permitted under … section 1291 and does not offend the confrontation clauses of the federal or state Constitutions—not because the opportunity to cross-examine the witness at the preliminary hearing is considered an exact substitute for the right of cross-examination at trial [citation], but because the interests of justice are deemed served

6

by a balancing of the defendant's right to effective cross-examination against the public's interest in effective prosecution. [Citations.]" (*Zapien*, at p. 975; see *People v. Samayoa* (1997) 15 Cal.4th 795, 850 (*Samayoa*).)

Here, as in *Zapien* and *Samayoa*, defendant's "interest and motive for cross-examining [T.D.] during the preliminary hearing were sufficiently similar to those existing at trial so as to permit the admission of [T.D.'s] preliminary hearing testimony." (*Zapien, supra*, 4 Cal.4th at p. 975; see *Samayoa, supra*, 15 Cal.4th at p. 851.) This is so even though defendant now claims that his counsel during the preliminary hearing missed several opportunities to attack T.D.'s credibility through cross-examination. "The possibility that current counsel would have cross-examined a witness differently or more searchingly does not, in itself, render the prior testimony inadmissible … ." (*People v. Bloom* (2022) 12 Cal.5th 1008, 1044.)

Relying on *People v. Louis* (1986) 42 Cal.3d 969, defendant argues his counsel at the preliminary hearing had no motive to conduct a full and thorough cross-examination of T.D. at that early stage of the proceedings. But as defendant acknowledges, the decision in *Louis* did not resolve whether the defendant had an opportunity to cross-examine the relevant witness at the preliminary hearing "with an interest and motive similar to those he had at trial." (*Louis,* at p. 990.) Cases are not authority for propositions not considered or ruled upon. (*People v. Chavez* (2020) 54 Cal.App.5th 477, 480.) Although the court in *Louis* stated in dicta that it had "some doubt" about whether defense counsel had a similar interest and motive in cross-examining the witness at the preliminary hearing (*Louis,* at p. 990), the more recent *Zapien* and *Samayoa* decisions make clear that a defendant will generally have a "sufficiently similar" interest and motive in cross-examining a witness at a preliminary hearing. (*Zapien, supra*, 4 Cal.4th at p. 975; *Samayoa, supra*, 15 Cal.4th at p. 851.) Whether or not that was the case in *Louis*, it is the case here.

## II

Defendant next contends the prosecutor committed prosecutorial misconduct during her rebuttal argument.

In response to statements made by defense counsel during his closing argument about T.D.'s absence from the trial, specifically that he was unable to cross-examine her and the jury was therefore unable to properly assess her credibility, the prosecutor made the following remarks during her rebuttal argument:  "[T.D.] testified at the preliminary hearing but did not testify in front of you.  So the person who abused her should not be convicted because [she] is still in fear of him?  Murder victims don't testify either and people are convicted of their murders all the time."  Defense counsel did not object to these remarks or request a curative admonition.  Defendant's prosecutorial misconduct claim is therefore forfeited.  (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1328.)  Anticipating this conclusion, defendant argues in the alternative that he received ineffective assistance of counsel.

" 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.  [Citations.]  A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.  Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel.  [Citations.]  If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation.  [Citation.]  Otherwise, the claim is more

8

appropriately raised in a petition for writ of habeas corpus.' [Citation.]" (*People v. Gray* (2005) 37 Cal.4th 168, 206-207 (*Gray*).)

Defense counsel was not asked why he did not object to the challenged comments. However, a satisfactory explanation appears to this court. Although a prosecutor commits misconduct by referring to facts not in evidence or mischaracterizing the evidence, she " 'enjoys wide latitude in commenting on the evidence, including the reasonable inferences and deductions that can be drawn therefrom.' " (*People v. Collins* (2010) 49 Cal.4th 175, 230; see *People v. Cook* (2006) 39 Cal.4th 566, 608 ["prosecutor may make fair comment on the state of the evidence"].) Moreover, it is for the jury to decide "the reasonableness of inferences counsel draws from matters in evidence." (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 787.) Here, there is strong evidence in the record that defendant abused T.D., who did not appear for trial. There is also evidence in the record that T.D. was afraid of defendant. From those facts, the prosecutor argued an inference that T.D. did not appear for trial because she was afraid of defendant. Whether that inference is reasonable or not was for the jury to decide. (*Ibid*.)

Turning to the prosecutor's comment about murder victims not testifying, a prosecutor "may argue facts not in evidence that are common knowledge or drawn from common experiences." (*People v. Young* (2005) 34 Cal.4th 1149, 1197.) It is certainly common knowledge that a murder victim cannot testify against his or her murderer. It is also common knowledge that people are tried and convicted of murder notwithstanding the absence of victim testimony. The point the prosecutor was making was simply that, just as a murderer may be convicted of murder without victim testimony, so too may a domestic abuser be convicted of domestic violence without such testimony.

Defendant argues the comments implied that T.D. was not present at the trial because she had been murdered and that defendant was responsible. "When a claim of misconduct is based on the prosecutor's comments before the jury, ' "the question

9

is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' [Citation.]" (*People v. Friend* (2009) 47 Cal.4th 1, 29.) Here, there is no reasonable likelihood that the jury understood the prosecutor's comments to suggest that defendant or anyone else murdered T.D. Defendant has not established ineffective assistance of counsel based on the lack of objection to the prosecutor's rebuttal argument.

### III

Defendant further asserts that the prosecutor violated *Brady* by failing to return his cell phone to him before trial.

### A

When defendant was arrested, police seized his cell phone. During trial, before defendant testified, defense counsel sought to add an additional defense witness, G.S. Defense counsel stated that he had just obtained G.S.'s contact information and counsel believed G.S. could be an alibi witness, although counsel had not yet spoken to him. The prosecutor objected to the late notice. Defense counsel responded that G.S.'s contact information was on defendant's cell phone, and although the prosecutor had agreed to provide the defense with access to the phone under certain conditions, defendant had not agreed to those conditions. Defense counsel was ultimately able to obtain G.S.'s contact information from defendant, who apparently got it from his former employer. The prosecutor stated that defendant was given every opportunity to access the cell phone, but the prosecution's investigator would have to be present to make sure there would be no manipulation of the phone by the defense investigator. The trial court reserved ruling on whether G.S. would be allowed to testify. After defendant testified, defense counsel said he would interview G.S. that afternoon and provide the prosecutor with additional information. Thereafter, the defense did not seek to call G.S. as a witness.

After the jury returned its verdicts, defendant made a motion to represent himself, which the trial court granted. Defendant filed numerous motions, including a motion for

10

new trial, a motion for mistrial, and a motion for dismissal. In the new trial motion, defendant claimed, among other things, that the prosecution violated *Brady* by withholding his cell phone. Defendant argued the phone contained information that would prove he was nowhere near T.D. when she was injured. Defendant added that the prosecution withheld " 'ping data' " that would prove he was not around T.D. at the time of the crimes. The motions for mistrial and dismissal included similar claims.

At a hearing on the motion for mistrial, defendant said that through two different attorneys, he asked for the cell phone. He said authorities had a search warrant for his cell phone; it was to be tracked to locate him for an arrest warrant. Defendant argued the cell phone location data could prove he was not at the scene of the crimes, but the prosecutor refused to turn it over before trial. Defendant acknowledged that his investigator told him the search warrant was issued on November 1, 2019, and would not have returned any location data prior to that date, but defendant did not believe it, saying "they can go backwards and forwards."

The prosecutor said defendant's cell phone had been held due to an ongoing investigation into other possible crimes; the investigation did not result in additional charges. But the defense had been given the opportunity to access the phone in the presence of a prosecution investigator, and after trial, the phone was released to defendant. Regarding the search warrant, the prosecutor confirmed it had been issued on November 1, 2019, to locate defendant and take him into custody. According to the prosecutor, because the warrant specifically asked for location data during the month of November, there would not be any exculpatory information regarding the crimes in this case, which occurred on October 21, 2019.

At a subsequent hearing, the trial court confirmed that the purpose of the search warrant was to find defendant. Defendant complained that the phone was not returned until after trial, asserting it had exculpatory information in it, specifically a text message from T.D. that he claimed showed they were not together that morning. The prosecutor

11

again said defense counsel had been given the opportunity to access the phone. The trial court ruled the *Brady* challenge was unfounded.

B

Under *Brady*, "the government has the obligation to disclose to the defendant evidence in its possession that is favorable to the accused and material to the issues of guilt or punishment. [Citations.] Evidence is material if a reasonable probability exists that a different result would have occurred in the proceeding had the evidence been disclosed to the defense. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. [Citations.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 954.) Thus, a *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (*Strickler v. Greene* (1999) 527 U.S. 263, 281-282 [144 L.Ed.2d 286].) On appeal, defendant has the burden of establishing a *Brady* violation. (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 418.) We independently determine whether such a violation has occurred but accord great weight to the trial court's factual findings when supported by substantial evidence. (*Ibid*.)

Defendant has not established the first required component of his *Brady* claim. He has not shown that any of the information on his cell phone would have been favorable to his defense. With respect to G.S.'s contact information, which was obtained by other means and did not result in G.S. testifying for the defense, defendant makes no argument that G.S. would have actually provided him with an alibi had he testified. As for the location data, even if the phone contained such data, defendant offers no reason to believe his phone was anywhere other than David L.'s house during the incident, aside from his self-serving statements at the hearing on the *Brady* motion. Regarding the ping data received in response to the search warrant, the prosecutor explained it would not have been exculpatory because it was obtained to find defendant after the crimes for the

12

purpose of arresting him, and it did not cover the date of the incident at David L.'s house. Defendant disputes this, but he does not show that any such data would have been favorable to the defense.

Finally, defendant asserts that a text message exchange between him and T.D., which he received after the prosecutor returned his phone, was favorable because it showed he was somewhere other than David L.'s house at the time. In support of this assertion, however, defendant cites only his self-serving statements that this was the case. To the extent the text messages exist, they are outside the record and cannot support reversal on appeal. (See *People v. Black* (2009) 176 Cal.App.4th 145, 153 [a claim raising matters outside the record on appeal should be resolved in a habeas corpus proceeding].)

Because a successful *Brady* claim requires all three components, and the first component -- evidence favorable to the accused -- has not been established, we need not address the other two components.

### IV

In addition, defendant claims his trial counsel provided ineffective assistance by failing to adequately investigate the case.

### A

Defendant's new trial motion was based in part on a claim of ineffective assistance. Defense counsel testified at the hearing on the motion. The following portions of counsel's testimony are relevant to defendant's arguments on appeal.

In response to questioning from defendant, defense counsel testified that he investigated the case to the best of his ability. Acknowledging that he did not send an investigator to interview potential witnesses, defense counsel said defendant had been uncooperative in providing contact information or in assisting defense counsel in how to contact potential witnesses. Defense counsel said defendant told him T.D. would not show up and testify, and because of that, defendant believed he would not be convicted,

13

so he did not want to get anybody else involved. Defense counsel was asked why he did not interview defendant's brother, A.K. T.D. had testified that A.K. had been nearby during another alleged prior assault. Defense counsel explained that because defendant had described A.K. as a drug addict without housing, defense counsel believed A.K. would not be a reliable witness. Asked whether he investigated if defendant and T.D. had lived in an office building for three years, defense counsel said he "was not really able to," but he did speak with David L. at one point, who confirmed they "were living somewhere together around that time."

Regarding the bodycam footage of T.D.'s statement to police, defense counsel said he had reviewed the prior statement and it "mirrored the allegations in the police reports." Defense counsel acknowledged "there may have been some inconsistencies" between her statement to police and her preliminary hearing testimony, "but for the most part, it looked to be rather consistent." Apparently toward the end of the video, two officers made certain comments about whether they believed T.D. Defendant asked defense counsel why he did not investigate that or have the footage played for the jury. Defense counsel said he did not believe it was relevant.

Speaking generally about his investigative efforts, defense counsel said he was happy to investigate and happy to look into the issues defendant raised, but often he received pushback from defendant. He said defendant was not very cooperative with the investigation. Defense counsel mentioned that defendant refused to provide his password so the investigator could access defendant's cell phone, in the presence of the prosecution's investigator, to attempt to find a potential alibi witness. Defense counsel stated: "My recollection is the only thing you would agree to was to have that phone returned back to you." Defense counsel added that he did not want a situation where the phone was unlocked and there was evidence of other crimes. Asked why he did not simply have the phone returned, defense counsel said he had no meritorious reason for a motion to have it released. According to defense counsel, they had other ways of getting

14

the contact information for the witness.  Ultimately, the witness "seemed to avoid service" and was never served with a subpoena.

B

"[W]hen reviewing a claim of ineffective assistance, we 'must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.' [Citation.] 'Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance … , and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  [Citation.]  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' [Citation.]" (*In re Friend* (2022) 76 Cal.App.5th 623, 635.)  As stated previously, defendant has the burden of proving ineffective assistance, and must do so by demonstrating that counsel's representation fell below an objective standard of reasonableness and that defendant suffered prejudice as a result of counsel's unreasonable actions or inactions. (*Gray, supra*, 37 Cal.4th at pp. 206-207.)  Defendant has not carried his burden.

Defendant faults defense counsel for not demanding that the prosecution hand over his cell phone or scheduling a hearing to determine the legal basis upon which the phone was being held.  However, as the prosecution explained, the phone was being held for the investigation of possible additional crimes.  Defense counsel did not believe he had a "meritorious reason to file a motion to have it released."  On appeal, defendant does not supply this court with any meritorious argument that he believes would have secured the release of the phone.  He simply states that there were "Fourth Amendment implications involved," and assumes that had defense counsel "advocated for [defendant]," he would have been able to access the phone without acceding to the

15

prosecution's offer to allow such access only in the presence of their investigator. It is defendant's burden, however, to show that defense counsel's conduct was unreasonable. Without demonstrating that the phone should have been released, defendant cannot show that defense counsel's assessment was unreasonable, or that defendant experienced any prejudice from defense counsel's failure to seek the phone's release. Moreover, the prosecution offered the defense access to the phone with conditions to prevent evidence tampering. Defendant did not want to accede to those conditions. We decline to conclude that defense counsel's decision to comply with defendant's wishes fell below an objective standard of reasonableness.

Defendant complains defense counsel did not investigate T.D.'s claim that she lived in an office building with defendant for three years, something defendant describes as an "incredible assertion." According to defendant, defense counsel should have gone to the location, taken photographs, or interviewed neighbors. Defendant also faults defense counsel for not interviewing his parole officer, "who would necessarily know where and with whom [he] was living." However, as defense counsel explained, he investigated the living arrangement by speaking with David L. Defense counsel said he did not interview others because defendant believed he would not be convicted and he did not want to involve anyone else. Again, we decline to conclude that defense counsel acted unreasonably.

Defendant further contends that defense counsel did not interview A.K. But defendant told defense counsel A.K. was a drug addict without housing and would not be a reliable witness or have anything to add. Defendant cannot now assert that his counsel acted unreasonably in believing him. As for other witnesses, defendant told counsel he did not want to get others involved.

Moreover, defendant faults defense counsel for failing to obtain and review the bodycam footage from T.D.'s police interview. However, defense counsel testified he did review the footage and that T.D.'s police statement and her preliminary hearing

16

testimony were "rather consistent." The trial court was entitled to believe defense counsel. (See *People v. Smith* (1993) 6 Cal.4th 684, 696-697.)

Finally, defendant complains that defense counsel did not attempt to locate G.S. until defendant provided him with G.S.'s full name. Defendant points out that he gave defense counsel G.S.'s first name prior to trial and faults him for not going to defendant's previous place of work to try to get G.S.'s full name and to locate him. We need not determine whether defense counsel should have done more to locate G.S. because, as we explained in connection with defendant's *Brady* claim, he provides this court with no reason to believe that G.S. would have actually provided him with an alibi, or any helpful testimony at all, had he testified. (See *People v. Bolin* (1998) 18 Cal.4th 297, 334 [defendant must show that the witness would have provided exculpatory testimony].) Defendant does not establish a reasonable probability that the result would have been different had defense counsel done more to locate G.S.

Defendant has also failed to demonstrate prejudice flowing from any other aspect of his ineffective assistance claim. With respect to the contents of the cell phone, as we also explained in rejecting his *Brady* claim, defendant has not shown that any of the phone's contents would have been helpful to the defense. Defendant likewise does not demonstrate a reasonable probability that the result would have been different had the phone been released. The alleged failure to adequately investigate whether defendant and T.D. lived in an office building for three years does not undermine our confidence in the outcome. As for the failure to interview A.K., defendant was acquitted of the charge arising from the relevant alleged prior assault, so there is no prejudice as to that charge. As for the crimes at David L.'s house, there is no showing that A.K. and others would have specific information about them. Any general impeachment evidence they might have provided does not undermine our confidence in the outcome.

V

Defendant contends the trial court erred in denying his new trial motion under Penal Code section 1181, which was based in part on ineffective assistance and in part on newly discovered evidence.

"A trial court may grant a new trial motion '[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial.' [Citation.] In ruling on such a motion, the trial court considers several factors: ' " '1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.' " [Citations.]' " (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1151, quoting *People v. Delgado* (1993) 5 Cal.4th 312, 328.) "A new trial motion based on newly discovered evidence is looked upon with disfavor. We will only disturb a trial court's denial of such a motion if there is a clear showing of a manifest and unmistakable abuse of discretion." (*Mehserle*, at p. 1151; see *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1251-1252.)

Defendant claims he proffered as new evidence text messages between himself and T.D. showing they were not present together at the time of the crimes. He claims he also attempted to offer a rental agreement to demonstrate that he was not living in the office building during the relevant time period.

At the hearing, the prosecutor argued: "None of this is new evidence. All of this evidence was available at the time of trial." Defendant responded that the text messages were newly discovered because the prosecutor had his phone. He said the remaining evidence was newly discovered because his trial counsel had not done an investigation. The trial court denied the newly discovered evidence portion of the new trial motion, finding no new or relevant evidence that would affect the outcome of the case.

18

When the text messages were mentioned again during an offer of proof, the prosecutor objected, noting that the trial court had already denied the newly discovered evidence portion of the new trial motion. The evidence was never admitted into evidence and it is not part of the record on appeal.

Defendant argues the trial court erred in refusing to accept his proffered evidence and by denying the new trial motion without reviewing it. However, defendant points this court to no portion of the record where he offered the text messages and other items into evidence and was refused. In any event, defendant has not carried his appellate burden of demonstrating an abuse of discretion. Defendant did not establish at the hearing on the new trial motion, and has not persuaded this court on appeal, that any of the evidence was newly discovered within the meaning of Penal Code section 1181. Stated simply, defendant, "with reasonable diligence, could have discovered and produced this evidence at trial." (*People v. Soojian* (2010) 190 Cal.App.4th 491, 512.) Moreover, based on his own description of the purported newly discovered evidence, "[w]e conclude the trial court did not abuse its discretion by denying the new trial motion because the new evidence would have added little to the trial and would not have rendered a different result probable on retrial." (*Mehserle, supra*, 206 Cal.App.4th at p. 1151.)

## VI

Having rejected each of defendant's previous claims of error, his assertion of cumulative prejudice must also fail. Stated simply, there is no cumulative prejudice to assess.

## VII

Finally, defendant claims the trial court erred by imposing an upper term sentence without "conduct[ing] a meaningful review of whether his mental health issues and childhood abuse were contributing factors in the crimes for which he was convicted." The claim is forfeited.

19

Effective January 1, 2022, two years before defendant was sentenced in this case, Senate Bill No. 567 (2021-2022 Reg. Sess.) added subdivision (b)(6) to Penal Code section 1170, creating "a presumption in favor of the lower term if a defendant's psychological, physical, or childhood trauma contributed to the commission of the offense." (*People v. Tilley* (2023) 92 Cal.App.5th 772, 777 (*Tilley*); see Pen. Code, § 1170, subd. (b)(6)(A).) This provision "does not require the [trial] court to impose the lower term because of defendant's mental illness, but for psychological trauma. While at least one court has concluded 'psychological trauma based on mental illness may be a circumstance qualifying for the lower term presumption in section 1170, subdivision (b)(6),' that court also emphasized that mental illness *alone* did not qualify for the lower term presumption." (*Tilley*, at pp. 777-778, quoting *People v. Banner* (2022) 77 Cal.App.5th 226, 241.) Moreover, the psychological or childhood trauma must have been "a contributing factor in the commission of the offense." (Pen. Code, § 1170, subd. (b)(6).)

"Generally, if a party does not object to the sentence in the trial court, they may not claim on appeal the trial court failed to properly make or articulate its discretionary sentencing choices." (*Tilley, supra*, 92 Cal.App.5th at p. 778; see *People v. Scott* (1994) 9 Cal.4th 331, 351.) Although defendant represented himself at the sentencing hearing, he is held to the same standard as an attorney. (*People v. Frederickson* (2020) 8 Cal.5th 963, 1000.)

At the sentencing hearing, defendant did not seek the lower term based on Penal Code section 1170, subdivision (b)(6), he did not object to the trial court's imposition of the upper term, and he did not argue that psychological or childhood trauma contributed to the commission of his crimes. Accordingly, this claim is forfeited. (*Tilley, supra*, 92 Cal.App.5th at p. 778.) Moreover, even if defendant's claim is not forfeited (see *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 994, fn. 8), nothing in the sparse statements in defendant's application for mental health diversion or probation

20

report, on which he relies, demonstrates that the trial court abused its discretion in declining to consider or impose the lower term.

## DISPOSITION

The judgment is affirmed.

/S/
MAURO, Acting P. J.

We concur:

/S/
RENNER, J.

/S/
FEINBERG, J.